[No. G038150. Fourth Dist., Div. Three. Jan. 15, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
RENE MARTINEZ, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to *California Rules of Court,* rules 8.1105(c) and 8.1110, this opinion is certified for publication with the exception of part 3.

COUNSEL

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Peter Quon, Jr., and Maxine Cutler, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

RYLAARSDAM, Acting P. J.—Defendant Rene Martinez was convicted of second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c), count 1; all further statutory references are to this code unless otherwise stated) and street terrorism (§ 186.22, subd. (a) (section 186.22(a)), count 2). The jury also found true that count 1 was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1) (section 186.22(b))).

Defendant contends there was insufficient evidence to prove either the street terrorism count or the gang enhancement. He also claims a jury

instruction as to the street terrorism count was inadequate because it failed to include a statement that the underlying offense must be gang related. Additionally, he challenges certain evidence used to prove the robbery conviction, claiming the prosecutor should not have been allowed to ask the victim leading questions and that inadmissible hearsay was improperly admitted. Finally he maintains that the errors were cumulative, requiring reversal. Finding no errors, we affirm.

## FACTS

When police officers Omar Adham and Dustin Ciscel were patrolling one evening they saw three young men looking into an alley. They also saw three different adult men in the alley, two of whom they later identified as defendant and codefendant Jose Garcia. When the officers drove toward them, the three adults in the alley ran. Ciscel chased and eventually caught defendant and Garcia.

Defendant gave police a different name and birthdate. Ciscel noted defendant had "KK" tattooed on the back of his head. From prior experience Ciscel knew KK stood for the gang King Kobras or Varrio King Kobras.

Meanwhile, in the alley, Adham approached Rene Azenon, who appeared "overwhelmed," "disoriented," and "in shock." Azenon claimed he had just been beaten and robbed. Azenon slurred his words and was unsteady; Adham smelled alcohol on him.

Azenon said he had met up with Garcia, defendant and a third man in the alley. One of them called to Azenon, saying he had something important to tell him. When he neared the men, defendant and Garcia punched him, and when he fell the third man kicked him. Defendant said, "Give me your cash. I got a shank," or "I am going to shank you or shoot you." Defendant and Garcia then took $80 from Azenon. Azenon identified Garcia and defendant in an in-field identification.

At trial Azenon testified he had no memory of the incident and did not answer even one question about what had occurred that night. As a result the court declared him a hostile witness and allowed the prosecution to ask leading questions setting out the events as he had reported them to Adham.

Two of the onlookers were Julio Garcia (Julio) and Bernard Siron. Julio testified he saw two men beating another man in the alley; they took the victim's money and ran away. He also testified that after an officer interviewed him about the events, he was taken to another location and shown two men. He identified them by their clothing.

Raul Quezada, the officer who interviewed Julio, testified that Julio told him he heard one of the assailants say to Azenon, "give me your money." One of the men also said the police were coming. Within 15 or 20 minutes, Quezada conducted an in-field showup and Julio identified both Garcia and defendant as those who had hit Azenon.

Siron testified he saw two to three men in the alley; one man punched another, causing the latter to fall down. Someone took the victim's money and the assaulters ran away.

Brian Hayes, one of the investigating officers, testified Siron approached him that night and told him he had seen three men; one punched the victim, who fell to the ground. One of the men then took money from the victim and the group ran off. Hayes took Siron to an in-field showup; Siron could not identify Garcia but did identify defendant as one of the assailants.

After Garcia was arrested, he was interviewed by gang detective Craig Friesen. Garcia said he belonged to the King Kobras, having been jumped in when he was 14. He told Garcia his moniker and showed him gang hand signs and his King Kobras tattoos. He explained the meaning of some gang terms, including "backup" (assisting another gang member commit a crime by watching for police and completing the crime if necessary), "ranking" (when a member denies gang membership), and "taxing" (the various consequences of ranking), consistent with Friesen's understanding of those terms. Garcia also told him he knew fellow gang members had been arrested for several crimes, including grand theft auto and assault.

Gang detective Scott Schulze of the Los Angeles County Sheriff's Department testified about street gangs in general and the King Kobra gang specifically. He opined that both Garcia and defendant were active members of the King Kobras and that the robbery was committed in association with that gang and promoted the gang.

Defendant testified he had been a member of the King Kobras when he was a teen, at which time he received two tattoos, but had disassociated from the gang eight or nine years prior. He denied robbing Azenon and said he was with Garcia because he was his brother-in-law.

Additional facts are set out in the discussion.

## DISCUSSION

### 1. *Sufficiency of the Evidence*

#### a. *Introduction*

Defendant challenges the substantive crime of street terrorism and the gang enhancement, contending there was insufficient evidence to show the King Kobras was a criminal street gang, he was an active gang member, or the robbery was committed for the benefit of a street gang. We disagree.

Where there is a claim of insufficient evidence, "we 'examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129 [40 Cal.Rptr.3d 118, 129 P.3d 321].) "Unless it is clearly shown that 'on no hypothesis whatever is there sufficient substantial evidence to support the verdict' the conviction will not be reversed. [Citation.]" (*People v. Quintero* (2006) 135 Cal.App.4th 1152, 1162 [37 Cal.Rptr.3d 884].) We apply the same standard to convictions based largely on circumstantial evidence. (*People v. Meza* (1995) 38 Cal.App.4th 1741, 1745 [45 Cal.Rptr.2d 844].)

█ Under section 186.22(a), to be convicted of street terrorism a person must "actively participate[] in a[] criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and . . . willfully promote[], further[], or assist[] in any felonious criminal conduct by members of that gang . . . ." "[A] person 'actively participates in any criminal street gang,' within the meaning of section 186.22(a), by 'involvement with a criminal street gang that is more than nominal or passive.' [Citation.]" (*People v. Castenada* (2000) 23 Cal.4th 743, 752 [97 Cal.Rptr.2d 906, 3 P.3d 278].)

█ A criminal street gang is defined as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of [robbery, assault with a deadly weapon, and numerous other enumerated felonies], having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." (§ 186.22, subds. (f), (e)(1), (2).)

█ A sentence enhancement under this section may be imposed where the defendant is "convicted of a felony committed for the benefit of, at the

direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (§ 186.22(b)(1).)

### b. *Evidence King Kobras is a Street Gang*

Defendant claims the only evidence to support the finding King Kobras is a street gang came from Schulze, the gang expert, and that it did not suffice to prove the gang's primary activities fell within the statute or that gang members had engaged in a pattern of criminal activity. We are not persuaded.

Schulze, who had spent the majority of his 14 years in law enforcement dealing with gangs, testified that for the past eight years he had worked in East Los Angeles, the King Kobras territory. He was familiar with the gang based on regular investigations of its activity and interaction with its members. He was also familiar with tattoos KK and VKKR, both of which identify the bearer as a member of King Kobras. He testified that at the time the crime was committed, it had documented members numbering 115 to 120. The gang's primary activities include robbery, assault—including assaults with weapons, theft, and vandalism. He testified about two predicate offenses, both robberies, one in 2002 and one in 2003.

Relying on *In re Alexander L.* (2007) 149 Cal.App.4th 605 [57 Cal.Rptr.3d 226], defendant contends this testimony was insufficient because it lacked foundation—there was no evidence of how Schulze knew of or had obtained this information or whether it was reliable. But *Alexander L.* is different because there the expert never specifically testified about the primary activities of the gang. He merely stated "he 'kn[e]w' that the gang had been involved in certain crimes. . . . He did not directly testify that criminal activities constituted [the gang's] primary activities." (*Id.* at p. 611.) Here, on the other hand, Schulze had both training and experience as a gang expert. He specifically testified as to King Kobras's primary activity. His eight years dealing with the gang, including investigations and personal conversations with members, and reviews of reports suffices to establish the foundation for his testimony. (*People v. Gardeley* (1996) 14 Cal.4th 605, 619–620 [59 Cal.Rptr.2d 356, 927 P.2d 713].)

The robbery defendant committed with another gang member, Garcia, is also evidence of the gang's primary activity and is consistent with Schulze's testimony. (See *People v. Sengpadychith* (2001) 26 Cal.4th 316, 323 [109 Cal.Rptr.2d 851, 27 P.3d 739] [gang members' past or current conduct in committing one of § 186.22, subd. (f)'s delineated crimes relevant to show primary activity].)

### c. *Evidence Defendant is an Active Gang Member*

■ The other ground on which defendant challenges the conviction for street terrorism is that there is insufficient evidence to show he is an active gang member. Active participation is defined as "involvement with a criminal street gang that is more than nominal or passive." (*People v. Castenada, supra,* 23 Cal.4th at p. 747.) It does not require that "a person devot[e] 'all . . . or a substantial part of his time and efforts' to the gang. [Citation.]" (*Id.* at p. 752.)

We reject defendant's assertion the prosecution did not elicit any evidence on this issue. To the contrary, Schulze testified he believed defendant was an active member of the King Kobras. He based this on a review of booking photos of defendant that showed he had a VKKR tattoo over his eyebrow and a KK tattoo on the back of his head, which could be seen because he had a shaved head. He also spoke with a detective who had interviewed defendant after his arrest and reported that defendant said he had grown up in East Los Angeles, admitted being a member of King Kobras, and gave a gang moniker. He also relied on the crime defendant committed, one of the gang's primary activities, and that he did it in association with another gang member, Garcia.

Defendant points to evidence that he had not lived in East Los Angeles for many years and testified he had left the gang approximately 10 years before, claiming there was no evidence to the contrary. Defendant also highlights that before the crime, Schulze, who worked in that area and specifically dealt with the King Kobras, had never heard of defendant. But defendant himself told police he was a member.

■ Additionally, the sufficiency of the evidence showing active participation is not altered by the existence of other evidence offered by defendant to show he was not an active participant in the gang. Resolution of conflicting evidence and credibility issues was for the jury to decide. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].) It is clear from the verdict finding defendant guilty of street terrorism that the jury believed he was actively participating in the gang. Because substantial evidence supports this determination, " 'that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. [Citations.]' [Citation.]" (*People v. Thomas* (1992) 2 Cal.4th 489, 514 [7 Cal.Rptr.2d 199, 828 P.2d 101].)

■ There was sufficient evidence to show defendant was an active participant in the King Kobras.

### d. *Evidence Robbery Committed to Assist Gang's Criminal Conduct*

Defendant asserts the gang enhancement is not supported by evidence that the robbery was committed for the benefit of the gang or with the intent to

promote the gang. However, section 186.22(b) is satisfied if the crime was "committed for the benefit of, at the direction of, or in association with a[] criminal street gang, with the specific intent to promote, further, or assist in . . . criminal conduct by gang members . . . ." (§ 186.22(b)(1).) The record supports a finding the crime was committed "in association with" the gang with the intent to assist criminal conduct. (*Ibid.*)

*People v. Morales* (2003) 112 Cal.App.4th 1176 [5 Cal.Rptr.3d 615] is instructive. There the defendant was convicted of robbery and attempted robbery with gang enhancements, having committed the crimes with two other gang members. He made the same argument defendant makes here, claiming there was insufficient evidence to satisfy section 186.22(b). Specifically he asserted that the mere fact he committed the crime with two other gang members was not enough. The court disagreed, stating, "The evidence that defendant knowingly committed the charged crimes in association with two fellow gang members was sufficient to support the jury's findings on the gang enhancements . . . ." (*People v. Morales, supra*, 112 Cal.App.4th at p. 1179.) "[T]he jury could reasonably infer the requisite association from the very fact that defendant committed the charged crimes in association with fellow gang members." (*Id.* at p. 1198.)

■ Here the facts are similar. Defendant, who admitted membership in King Kobras, committed the crimes with Garcia, another admitted member. That Garcia was also defendant's brother-in-law does not cancel out that membership. Schulze testified this evidence showed defendant committed the robbery in association with the gang. The elements of the gang enhancement may be proven by expert testimony. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1047–1048 [16 Cal.Rptr.3d 880, 94 P.3d 1080].) Nor does it matter that defendant did not commit the crime on or live in gang turf or that Schulze had never heard of defendant or Garcia. Defendant did not even need to be an " 'active' " or " 'current, active' " gang member. (*In re Ramon T.* (1997) 57 Cal.App.4th 201, 207 [66 Cal.Rptr.2d 816].)

Defendant also challenges Schulze's testimony in response to the prosecutor's hypothetical question based on the facts of this crime. In answer to whether the robbery would have been committed for the benefit of the gang, Schulze stated: "That would promote that gang and it's based on the facts of . . . them being easily recognizable with their gang tattoos, their appearance, which appears to be gang members, their associating with each other, and even if it's not in an area that they usually are in, it could be an area that they're trying to . . . claim or trying to get a clique started in and even if they don't regularly claim that area, people will know of them, . . . even [if they're] visiting, people will be further intimidated by them specifically and also gang members, in general. And it will also aid in their respect to each

other, to other people in the gang and other people that they associate with that they're willing to go out and commit this crime."

Defendant likens this to *In re Frank S.* (2006) 141 Cal.App.4th 1192 [46 Cal.Rptr.3d 839]. There the minor was arrested in possession of methamphetamine, a knife, and a bandana and admitted he was a gang member. The court reversed the gang enhancement for insufficient evidence because "[t]he prosecution did not present any evidence that the minor was in gang territory, had gang members with him, or had any reason to expect to use the knife in a gang-related offense." (*Id.* at p. 1199.) The expert testified that a gang member would use a knife to protect himself and that possession of the knife by the minor would benefit the gang because it would protect other members if they were attacked by a rival gang. The court held that the expert testimony in conjunction with the minor's admitted gang membership was not sufficient to show the minor possessed the knife with the intent to benefit the gang.

This is not the same as the facts in our case. Here defendant, an admitted gang member sporting gang tattoos, actually committed the robbery with a gang confederate. That he was not in his gang's territory, by itself, does not necessarily overcome the other supporting evidence.

Defendant also challenges the expert's conclusion about benefiting the gang. He points out that the robbery was committed in a dark alley with nobody to witness it. Thus there was no intimidation factor. Additionally, he asserts, there was no evidence defendant or Garcia identified himself as a gang member or bragged about it. But there were observers, including Azenon, the victim, and witnesses Julio and Siron. And the tattoos of defendant and Garcia were clearly visible, thus identifying the men as gang members. In addition, although Azenon and Siron identified defendant as participating in the robbery immediately after it occurred, at trial neither could remember whom he had identified. This raises a reasonable inference they were too afraid to do so at trial based on defendant's gang status, despite Azenon's testimony he was not afraid.

Thus, this is different from *People v. Albarran* (2007) 149 Cal.App.4th 214 [57 Cal.Rptr.3d 92], which discredited the expert's opinion in overturning the gang enhancement. The court noted that during the shooting for which the defendant was convicted, there was no evidence the defendant attempted to gain respect or status: the shooters did not "announce[] their presence or purpose—before, during or after the shooting. There was no evidence . . . that any gang members had 'bragged' about their involvement or created graffiti and took credit for it." (*Id.* at p. 227.) But contrary to our case, the expert there testified he did not know why the shooting occurred. And there was enough other evidence here supporting the enhancement even if there was no bragging or graffiti.

As noted above, that there is conflicting or contrary evidence is only a factual and credibility determination performed by the jury. We may not take it into consideration but only decide if there is enough evidence supporting the finding, and the record reflects sufficient evidence to affirm the substantive crime and the enhancement.

## 2. *CALCRIM No. 1400*

As to the elements of the substantive crime of street terrorism, the jury was instructed with Judicial Council of California Criminal Jury Instructions (2006–2007) CALCRIM No. 1400. The relevant portion states: "The defendant is next charged in count 2 with active participation in a criminal street gang. To prove defendant's guilty of this crime, the People must prove, number one, the defendant actively participated in a criminal street gang; number two, when he participated in the gang, he knew members of the gang engaged in or have engaged in a pattern of criminal gang activity; and number three, the defendant willfully committed, assisted, furthered or promoted felonious criminal conduct by gang members."

Defendant asserts this instruction was inadequate because it "appears to apply to any offense in which it is shown that a gang member participated" and failed to instruct that the crime itself must be gang related. Criticizing the title of the instruction itself, "Active Participation in Criminal Street Gang," he also maintains that the language of the instruction would not prevent the jury from reaching a guilty verdict based only on "expert opinion on the ultimate issue" and the fact of gang membership itself.

■ Defendant misapprehends the elements of the substantive crime of street terrorism. Contrary to what is required for an enhancement under section 186.22(b), section 186.22(a) does not require that the crime be for the benefit of the gang. Rather, it "punishes active gang participation where the defendant promotes or assists in felonious conduct by the gang. It is a substantive offense whose gravamen is the *participation in the gang itself*." (*People v. Herrera* (1999) 70 Cal.App.4th 1456, 1467 [83 Cal.Rptr.2d 307], fns. omitted.)

The language of the instruction, which sets out the elements of the crime, dispels the claim that it is reasonably probable the jury would believe it could convict based on gang membership alone, and the title of the instruction is of no consequence since it is not read to the jury.

## 3. *Evidentiary Claims**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 1324.

## DISPOSITION

The judgment is affirmed.

Bedsworth, J., and Moore, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 30, 2008, S160835. Kennard, J., Werdegar, J., and Moreno, J., were of the opinion that the petition should be granted.