Filed 7/24/14  P. v. Roquemore CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B248501 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA397556) |
| v. | |
| DARRYL ROQUEMORE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gail Ruderman Feuer, Judge.  Affirmed with directions.

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Stephanie A. Miyoshi and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Darryl Roquemore appeals from his conviction by a jury of one count of sale of a controlled substance and one count of possession for sale of a controlled substance. We vacate his sentence on the possession count, remand for resentencing, and otherwise affirm.

## BACKGROUND

An amended information charged Roquemore in count 1 with sale, transport, or offer to sell a controlled substance (hydrocodone), in violation of Health and Safety Code, section 11352, subdivision (a), and in count 2 with possession for sale of a controlled substance (clonazepam), in violation of Health and Safety Code section 11375, subdivision (b)(1). The information alleged that Roquemore had two prior serious or violent felony convictions and two prior strike convictions, and that he had served three prior prison terms.

Roquemore pleaded not guilty and denied the allegations. A jury found him guilty as charged, and he admitted the prior conviction allegations. The trial court struck one prior strike and two of the three prison terms.

The trial court sentenced Roquemore to seven years, ordered him to pay restitution and fees, and awarded him presentence custody credit. He filed a timely appeal.

At trial, Los Angeles Police Department (LAPD) Detective Michael Ling testified that he supervised narcotics enforcement details for the central Los Angeles area. He had participated in over 100 undercover buy-bust operations. On February 14, 2012, he selected Fifth and Broadway, an area known for street prescription drug sales. As the officer in charge, he sat in an unmarked police vehicle that had a receiver, so he could hear the conversations of the undercover officers, who wore transmitters; the conversations were not recorded. Officer Debra Leabras was the undercover officer on his eight-person team. At the time of his testimony, she was on "injury on duty status," and was "unavailable for all purposes." The team included two uniformed chase officers and a secondary chase unit to back them up.

Officer Leabras wore a transmitter and carried prerecorded buy money (a photocopy of which had been made at the station), and had no other money or drugs. She wore civilian clothes and walked with crutches.

At 4:45 p.m., while it was still daylight, Detective Ling was sitting in his unmarked car about 100 feet away from the corner of Fifth and Broadway, with the wire working properly. When the light turned green, he saw Officer Leabras cross the street toward the southeast corner. She walked toward a group of black males standing outside a drugstore, and he began to hear a conversation. He recognized Officer Leabras's voice saying something about "pain, such a pain," and then heard a male voice talking about Vicodin and Klonopin (the street names for hydrocodone and clonazepam), although at the moment he could not see who was speaking. Detective Ling then saw a black male, Roquemore, emerge from the group and walk eastbound conversing with Officer Leabras, and heard Officer Leabras ask the price of Vicodin; the same male voice as before said $2 a pill. He saw Officer Leabras reach in her pocket and take out some money, and "observed the male dig into his pocket, start manipulating something in his hands. [¶] . . . [¶] . . . I could see motion, but I could not see what was in his hand." At that point they were 50 feet away from Detective Ling (on cross-examination, he conceded his testimony at the preliminary hearing that he was 100 feet away from the transaction was correct). "[W]hatever he was manipulating is kind of small, and his hands could cover it; and he was doing from inside the palm of his hand, so I couldn't see it." Large vehicles were blocking his view. Officer Leabras handed money to Roquemore, and Roquemore handed something back; Detective Ling could not see what it was. Roquemore put the money in his right front pants pocket, and Officer Leabras began to walk away eastbound, giving Detective Ling a prearranged signal to affirm that the deal was complete. Detective Ling also heard Officer Leabras say "no" when Roquemore asked if she also wanted to buy some Klonopin.

Roquemore walked westbound back to the corner where he had met Officer Leabras. Detective Ling used the police radio to direct the chase officers to detain Roquemore. A police car pulled up 15 feet behind Roquemore, who ran when he saw

3

two officers get out. Roquemore ran south, and the two officers pursued him. Detective Ling drove up to the intersection and made a left, and saw Roquemore running from the middle of the street on to the west sidewalk, with the two officers behind him. When he reached the west curb, Roquemore gave up and lay on the ground, where the officers handcuffed him and took him into custody.

Detective Ling testified that Officer Leabras, as the arresting officer, made the photocopies of the prerecorded bills and handled the purchased narcotics, itemizing how they were recovered, weighing them or counting them, and packaging them in an envelope for analysis. The arresting officer typically would also write the police report. He watched Officer Leabras process the evidence in his office, and saw her itemize the different types of pills, labeling them and putting them in envelopes. He identified Officer Leabras's handwriting on an evidence envelope bearing a field section number. He did not remember reviewing her police report. He also saw Officer Leabras keeping separate evidence consisting of different types of pills and a pill bottle. From a photo exhibit, he recognized her handwriting on a Post-it wrapped around the bottle, which was consistent with booking practice. She had told him that Roquemore handed her an orange pill bottle with 15 Vicodin pills inside.

On cross-examination, Detective Ling testified that he reviewed the report in preparation for his testimony and in preparation for the preliminary hearing, at which he had testified that the police report and the attached property report were complete and accurate. He remembered that the property report stated that an amber pill bottle contained 15 Vicodin pills, all with the inscription V3592. He saw Officer Leabras handle the pills, but he did not recall looking at them closely. He agreed that a closeup of a photograph of the Vicodin pills showed that one pill had a different inscription, "'Watson 349.'"

One of the chase officers recovered $30 in prerecorded buy money from Roquemore, one $20 and one $10 bill. Detective Ling had seen money handed over, but was not able to see the amount. Roquemore's fingerprints were taken, but no fingerprint evidence was retrieved from the bills, which were returned to a safe for use in other

4

cases.  He did not see Roquemore hold the medicine bottle containing the 15 Vicodin pills, or see him hand the pill bottle to Officer Leabras; no fingerprint evidence was retrieved from the bottle.  Detective Ling agreed that he had testified at a preliminary hearing that Officer Leabras complained of pain, and then Roquemore said, "Vicodin, clonazepam."  Officer Leabras's report stated that Roquemore was the first to speak, saying, "the pain, the pain," which was not accurate.  He did not know that Officer Leabras had been in the courthouse the day before, although he knew why she was not in court today.  Detective Ling did not recall Officer Leabras giving him a description of the seller.  He had been able to see the seller's face, although the car windows were tinted.

The prosecution called Officer Mark Holbrook, one of the chase officers, who testified that the description he and his partner Officer Trunco received of the seller was a black male in a brown jumpsuit.  When they arrived in their police car, Roquemore, who matched that description, was in front of the drugstore and then ran southbound on Broadway, pursued by the officers on foot.  Roquemore ran into traffic on the street, doubled back, and lay on the ground.  Other officers handcuffed Roquemore, and Officer Holbrook searched him, recovering money from his right front pants pocket as well as some pills, and a bottle of pills from his upper-right pocket.  Officer Holbrook handed the money and the pills to Officer Martinez.

Officer Martinez testified that he did not see the transaction, but received a radio call describing a black man in a brown jumpsuit, and when he arrived in the area he saw that person running southbound.  He saw Officer Trunco giving chase, and then saw Roquemore lying face down on the ground.  Officer Holbrook recovered from Roquemore's pants pocket a $20 and a $10 bill, an amber colored container with 20 to 30 clonazepam pills, which he opened at the station, three loose Vicodin pills stamped Watson 349, and a single Vicodin pill in an aluminum wrapper.  He verified that both bills appeared on the photocopy of the prerecorded buy money.  At the station, he handed the clonazepam pills to Officer Leabras for booking into evidence.  He never saw or had possession of the Vicodin pills allegedly purchased from Roquemore by Officer Leabras.

5

An LAPD chemist/criminalist testified that he tested the pills, which came to him in sealed evidence envelopes, several small envelopes inside a big one, stamped with the "DR" number. There was an orange plastic vial containing 15 Vicodin pills, and an orange plastic container holding 30 clonazepam pills. One of the 15 Vicodin pills had a different inscription from the others.

## I.     The trial court did not abuse its discretion in denying Roquemore's motion for mistrial as to count 1 and the request for continuance.

During jury selection, including on Tuesday, September 18, 2012, the prospective jurors were advised by the court that seven of the potential witnesses for the prosecution would be LAPD officers, including Officer Leabras. Out of the jurors' presence, defense counsel indicated that he did not prepare subpoenas for all the officers, although he knew that the prosecutor would not call them all. The prosecutor stated that he planned to call Detective Ling, Officer Holbrook, and a chemist. The defense stated that he would call Detective Ling and Officer Martinez and perhaps one other officer, and the prosecution stated that Officer Martinez and Detective Ling were under subpoena. The court advised the defense to subpoena all the witnesses that it wanted to call: "The defense can't rely on the People subpoenaing witnesses that the defense wants to call. Your office needs to subpoena all of them."

The next day, Wednesday, September 19, 2012, after jury selection was complete, defense counsel told the court that he had learned that morning that the prosecution would not call Officer Leabras, who was the undercover officer who allegedly purchased the drugs from Roquemore and wrote the arrest report. The prosecutor replied that Officer Leabras was his lead witness but was on injured duty status, and was instructed by LAPD not to appear in court. Defense counsel then moved to exclude all evidence of sales, as Officer Leabras was the only witness with personal knowledge that any sale occurred. The prosecutor indicated that another detective would testify about conversations he overheard between Roquemore and Officer Leabras. The court declined to exclude evidence before hearing all the testimony. The defense stated that Officer Leabras wrote the police report and her testimony was needed for impeachment purposes,

6

and the court responded that she should have been subpoenaed. Defense counsel stated that Officer Leabras was under order from LAPD not to respond to a subpoena, and the prosecutor confirmed that he had subpoenaed Officer Leabras and LAPD had rejected the subpoena because she was not on duty. Defense counsel responded, "that cannot be exactly correct because she was here yesterday. I saw her." He moved for a mistrial and a continuance so "the defense will then have an opportunity to do this trial with her." The court denied the mistrial as premature, admonished that "[t]he defense needs to subpoena witnesses that you think you need," and suggested that the defense again subpoena Officer Leabras and see if she would come to court.

In his opening statement, the prosecutor stated, "you will probably not hear from Officer Leabras. You'll hear from her supervisor that she is unavailable because of a medical issue, but you will hear from other officers who were there that day." In defense counsel's opening, he stated that the officer who "supposedly" engaged in the transaction "will not be here, conveniently," and that instead Detective Ling would testify "he saw this transaction . . . from afar." "So you won't hear any testimony . . . from the actual cop who supposedly did the transaction. So you're just going to have to take Officer Ling's word for it." Further, Officer Leabras wrote the police report, so that no one would be able to testify to what was in the report. The prosecution would not have met its burden to prove sale beyond a reasonable doubt.

During a break in Detective Ling's testimony, the prosecutor advised the court that Officer Leabras had been in court the day before, not under subpoena or court order but "as a favor," and she had later been reprimanded by her LAPD supervisor. The court declined to exclude testimony that Officer Leabras had been in court the day before, adding that it was "not clear that, if the defense subpoenas her, that she will not come to court at this point." The prosecutor stated that he understood LAPD would reject a subpoena for an off-duty officer; defense counsel stated that he was told LAPD would not accept a defense subpoena "unless it's done within their five-day requirement when the D.A. has not subpoenaed the officer."

7

During redirect, Detective Ling testified that Officer Leabras had been in the building the day before, although she was not under subpoena. That day, his commanding officer told him that she was not available for court because of her injured on duty status.

During another break in testimony, defense counsel stated that Roquemore's speedy trial right had been violated and asked for dismissal, as he had learned that the prosecution had initially dismissed the case because the absence of a critical witness, Officer Leabras, meant they were unable to proceed to trial. Nevertheless, the prosecution had immediately refiled. The prosecutor argued that they had believed Officer Leabras would be available this time around, and "[t]he fact that she became unavailable is in no way the fault of the People." The court stated that it believed everyone assumed that Officer Leabras would testify until it became clear the day before that she would not come back for trial, and denied the motion to dismiss.

The parties revisited Officer Leabras's absence during a recess after testimony was complete. For a third time, the court reminded the defense that it was its obligation to subpoena any witnesses it wanted for trial and could not rely on the prosecutor's failure to do so. Defense counsel argued that the Vicodin pills found on Roquemore did not have the inscriptions on the pills allegedly purchased by Officer Leabras, except for one, and the inconsistency with the description in the property report was directly relevant to the sales count. The court pointed out that the inconsistency was already in testimony. The prosecutor argued that in Officer Leabras's absence the report was a hearsay document, and the court repeated that the inconsistency was already in evidence from Detective Ling's testimony. The court excluded the property report as inadmissible hearsay,[1] concluded that Officer Leabras's failure to testify actually benefited Roquemore ("a multitude of issues are created that will help him"), and he could show no prejudice. Nevertheless, the court stated, "there's a real problem. . . . [T]he People made

---

[1] Roquemore does not claim on appeal that the report was admissible under an exception to the hearsay rule, and we therefore do not consider that issue.

a representation on the record that Officer Leabras was going to testify and she would have testified [and] was physically able to be here on the day when we picked the jury." The court had needed another day to pick a second panel, and it was only the next "morning that the People informed the defense that now Officer Leabras would not testify. That is very late notice to the defense." There was "fault on both sides," given that the defense should have subpoenaed all the witnesses they needed, and yet the prosecution had represented she would testify. The defense again moved for a mistrial, and the court reaffirmed its denial of the motion. The court reminded the parties that it had allowed the testimony from Detective Ling about the hearsay property report.

In closing, the prosecutor argued that there was proof beyond a reasonable doubt that Roquemore sold Vicodin or offered it for sale. In his closing argument, defense counsel described the inclusion of "offer[ing]" as "a fundamental change in their theory." Officer Leabras's absence "tells you they got the wrong person, and they know it," and the prosecution had not proven its case beyond a reasonable doubt. The prosecution did not bring her to testify because then the defense would have been able to pinpoint all the contradictions in her property report. Even without her, the defense had been able to show that her police report stated that Officer Leabras, not Roquemore, was the first to speak, which meant Roquemore did not make an offer to sell: "it wasn't the seller that made an offer." He hypothesized that the police tampered with the evidence after they arrived at the station. Defense counsel surmised that police found four loose Vicodin pills stamped "Watson 349" on Roquemore, and added one of the four to the 14 pills purportedly purchased by Officer Leabras, so as to connect the pills to Roquemore.

During deliberations, the jury sent a note to the court asking whether on Tuesday, September 18, Officer Leabras came to the courtroom to testify in Roquemore's trial. By agreement of the parties, the court responded in writing that the jury must reach a verdict based on the evidence presented in the courtroom and could ask for a readback of testimony if necessary. No readback request was received.

9

Roquemore argues on appeal that given Officer Leabras's absence, the court abused its discretion in denying the motions for mistrial and for continuance. We conclude that it was within the court's discretion to deny the motions.

A mistrial must be granted only if there is error and prejudice that cannot be cured through admonition or instruction. (*People v. Wallace* (2008) 44 Cal.4th 1032, 1084.) The trial court specifically stated after testimony was complete that it saw no prejudice from Officer Leabras's absence. While Officer Leabras could have identified the pills that Roquemore was alleged to have sold to her, even without her testimony the jury heard about the discrepancy between the property report and the photograph of the evidence (the marking on a single Vicodin pill). Defense counsel speculated in closing argument that the prosecution had not brought Officer Leabras to testify because, had he been able to cross-examine her about the discrepancy, he might have shown that the police altered the evidence and that no offer or sales transaction took place. This assumed that Officer Leabras was in fact available to testify despite her status as injured on duty, and the prosecutor did not object to the comment. "[C]omment inviting the jury to draw a logical inference based on the state of the evidence, including comment on the failure to call available witnesses, is permissible . . . ." (*People v. Ford* (1988) 45 Cal.3d 431, 449.) As illustrated by the defense's speculation in closing, whether Officer Leabras's absence deprived Roquemore of material evidence in his defense "'is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions.'" (*People v. Hines* (1997) 15 Cal.4th 997, 1038.) The trial court did not abuse its discretion in finding that no incurable prejudice had been shown.

"Continuances shall be granted only upon a showing of good cause." (Pen. Code, § 1050, subd. (e).) The trial court has broad discretion to determine whether the moving party has shown good cause, considering the anticipated benefits of the testimony, the likelihood of such benefits, the burden on other witnesses, jurors, and the court, and whether substantial justice will be accomplished or defeated by granting a continuance. (*People v. Doolin* (2009) 45 Cal.4th 390, 450.) "[A] showing of good cause requires that both counsel and the defendant demonstrate that they have prepared for trial with due

10

diligence." (*Ibid.*) On review, we consider whether the denial "was so arbitrary as to deny due process." (*Ibid.*)

The trial court noted that the anticipated benefits of Officer Leabras's testimony were unclear, and that her testimony might actually hurt the defense (after all, she was a prosecution witness). The request for continuance occurred on the first day of testimony with the jury waiting for opening statements. The trial court suggested, as it did the day before, that the defense subpoena Officer Leabras. The defense's failure to do so, even after being so advised at least three times, shows a lack of diligence which is not excused by the circumstance of the officer's purported unavailability. Given the stage of trial, the uncertain value of Officer Leabras's testimony, and the absence of a subpoena from the defense despite repeated urging from the court, failing to grant a continuance did not deny Roquemore due process.

## II.     The evidence was sufficient to show sales.

In a related argument, Roquemore contends that without the testimony of the officer who allegedly purchased the drugs from him, there was insufficient evidence that he sold hydrocodone. Because Detective Ling did not testify that he saw Roquemore transfer the Vicodin pills to Officer Leabras, Roquemore claims that the prosecution did not establish a chain of custody for the pills.

Substantial evidence supported the jury's finding that Roquemore sold the Vicodin to Officer Leabras. Detective Ling testified that Officer Leabras carried prerecorded buy money and no other money or drugs, and wore a transmitter. In daylight, from his police car about about 100 feet away, Detective Ling saw Detective Leabras approach the group of men, heard her say something about pain, and heard a male voice talking about Vicodin and Klonopin. He saw Roquemore emerge from the group and walk with Officer Leabras, and heard her ask the price of Vicodin, to which the male voice answered $2 a pill. He saw Officer Leabras reach in her pocket and take out money, saw Roquemore dig into his pocket and manipulate something, and then saw Officer Leabras hand Roquemore money and saw Roquemore hand something back. Roquemore put the money in his right front pants pocket. The arresting officers recovered the prerecorded

$30 from Roquemore's right front pants pocket, and Officer Leabras entered into evidence 15 Vicodin pills that had been in her possession (consistent with $2 per pill). While there was no eyewitness testimony that what Roquemore took out of his pocket and manipulated was the Vicodin, there was ample evidence from which a jury could infer that Detective Ling saw and heard Roquemore engage in what, based on his experience, was a hand-to-hand sale. Viewed in the light most favorable to the judgment, substantial evidence supported the guilty verdict. (See *People v. Martinez* (2008) 158 Cal.App.4th 1324, 1329.)

Detective Ling also testified that he saw Officer Leabras itemize the purchased narcotics and place them in bags, labeling them as evidence. While he did not look at them closely, and while there was an inconsistency between the police report and the photograph of the Vicodin pills, that did not constitute a missing vital link in the chain of possession of the drugs that would mean it was as likely as not that the evidence analyzed was not the evidence originally received. (*People v. Hall* (2010) 187 Cal.App.4th 282, 294.) When it is mere speculation that the evidence was altered, any doubt as to its weight is for the jury to resolve. (*Ibid*.)

## III.    The sentence imposed for count 2 was unauthorized.

The court imposed a seven-year sentence on count 1, consisting of three years for the offense, doubled based on Roquemore's prior strike, plus one year of enhancement for his prior prison term. For count 2 (possession of clonazepam for sale), the court selected the "low term" of three years to run concurrently with the sentence on count 1. The minute order, and the abstract of judgment, state that Roquemore was sentenced to the upper term of three years.

The parties agree that the sentence on count 2 was unauthorized. "Because concurrent terms are not part of the principal and subordinate term computation under [Penal Code] section 1170.1, subdivision (a), they are imposed at the full base term, not according to the one-third middle term formula, even though they are served at the same time." (*People v. Quintero* (2006) 135 Cal.App.4th 1152, 1156, fn. 3.) Concurrent terms are doubled pursuant to the Three Strikes law. A violation of Health and Safety Code

section 11375, subdivision (b), is punishable by a term of 16 months, two years, or three years. (Pen. Code, § 18, subd. (a).) The authorized sentences for count 2 were thus 32 months, four years, or six years. The three-year sentence imposed by the court was unauthorized, and we remand to the trial court for resentencing on count 2.

III. **The trial court's *Pitchess*[2] ruling was not an abuse of discretion.**

After the trial court granted Roquemore's motion under *Pitchess*, the parties stipulated that the court would review in camera Officer Leabras's personnel file. Roquemore has asked this court to review the trial court's in camera proceedings to determine whether the trial court was correct in its determination that no material in the file was discoverable. We have reviewed the transcript of the in camera hearing, and conclude that the trial court did not abuse its discretion.

## DISPOSITION

Darryl Roquemore's sentence on count 2 is vacated and the matter is remanded for resentencing. The superior court is directed to prepare an amended abstract of judgment and to forward a copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


WILEY, J.*

---

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

*  Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13