Filed 1/5/15  P. v. Whitehorn CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061273 |
| v. | (Super.Ct.No. RIF1305052) |
| MARCUS DSHAUN WHITEHORN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Edward D. Webster, Judge.  (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, §6 of the Cal. Const.)  Affirmed.

Marcus Dshaun Whitehorn, in pro. per.; Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

## FACTUAL AND PROCEDURAL HISTORY

### A.     STATEMENT OF THE CASE

On February 3, 2014, an information charged defendant and appellant Marcus Dshaun Whitehorn with unlawful possession of a controlled substance, to wit, methamphetamine, a felony, under Health and Safety Code section 11377, subdivision (a) (count 1). The information further alleged that defendant was previously convicted of first degree burglary, a serious and violent felony, in violation of Penal Code section 459, within the meaning of Penal Code sections 667, subdivision (c) and (e)(1), and 1170.12, subdivision (c)(1).

On April 2, 2014, the court held a *Marsden*[1] hearing. Defendant complained that he did not have enough time to speak with his public defender. The court continued the case for defendant and his public defender to have adequate time to speak. Thereafter, the court denied the *Marsden* motion.

On April 14 and 15, 2014, a jury trial was held. Defendant testified on his own behalf. Defendant admitted that he had the drugs in his possession. His only defense was that he took possession of the drugs for the sole purpose of disposing of them. The jury was instructed on the defense of transitory possession.

Defense counsel asked defendant why, after finding the drugs in his garage, he did not call the police. Defendant responded: "Truthfully, I never really been in a position to call the police, and, basically, calling the police just wasn't something that was—I was

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118.

programmed to do." Defense counsel then asked about the demographics of defendant's neighborhood. The prosecution objected; the court sustained the objection.

At a side bar, defense counsel argued that he was trying to establish defendant's state of mind for not calling the police. The court responded that counsel could ask defendant why he did not call the police and in general about his values. The court, however, told defense counsel that he could not ask about general ethnic breakdowns of neighborhoods as such questioning would not be fair to those neighborhoods. The court also stated that questions regarding how defendant grew up would allow the prosecution to spend a lot of time on cross-examination and that these issues would be marginally relevant. Thus, the court sustained the prosecution's objection on Evidence Code section 352 grounds. Later, the court stated on the record that if it had allowed defense counsel to ask about defendant's background, the prosecution would have been able to question defendant about his criminal background.

On April 15, 2014, the jury returned a guilty verdict for count 1, possession of methamphetamine under Health and Safety Code section 11377, subdivision (a).

On that date, a court hearing was held on the prior strike. The prosecution submitted evidence regarding the April 19, 2004, burglary conviction, including a chronological history and an abstract of judgment indicating that defendant had pled guilty to violation of Penal Code section 459, and had been sentenced to the midterm of four years. The court found the prior strike true.

On May 9, 2014, defense counsel filed a *Romero*[2] motion, which the prosecution opposed. On May 23, 2014, the court denied defendant's *Romero* motion, stating that defendant had a regular and ongoing criminal history. Moreover, the court noted that defendant had told his probation officer that he really had the methamphetamine to smoke with his girlfriend, admitting that he had perjured himself.

That same day, the trial court denied probation and sentenced defendant to the midterm of two years on count 1, which was doubled because of the strike prior, for a total of four years. The sentence was to run concurrent with the sentence in case No. RIF1000271, for which defendant was on probation at the time he was arrested in the instant offense. Defendant was given credit for 71 actual days and 70 days under Penal Code section 4019, for a total of 141 days.

The court ordered defendant to pay a restitution fine of $280, a parole revocation restitution fine of $280, a criminal conviction assessment of $30, and a court operations assessment fee of $40. The court found defendant unable to pay booking fees or to reimburse the county for attorney fees.

The court then denied probation for case No. RIF10002771, the case for which defendant was on probation at the time of his arrest in this case. That case involved a conviction for violating Penal Code section 211 (robbery). In case No. RIF10002771, the court sentenced defendant to the midterm of three years in state prison, to be served

---

[2] *People v. Superior Court (Romero)* (1996) 13 Cal. 4th 497, 917 P.2d 628.

4

concurrently with the sentence in this case. The court then awarded defendant 212 actual credits and 212 conduct credits under Penal Code section 4019.

On June 3, 2014, defendant filed this notice of appeal.

B.    PROSECUTION EVIDENCE

On June 6, 2013, Officer Garcia responded to a call reporting suspicious activity on Lasselle Street, near the mailboxes by the front of the gated community. The caller described two suspects, one black and one white, both wearing hoodies and carrying flashlights.

When Officer Garcia arrived at the location near the mailboxes, he contacted defendant, a black man wearing a hoodie, who he believed fit the description. Defendant was alone and did not have a flashlight. Defendant told the officer he lived in the gated community. The officer never found anyone who fit the description of the white suspect identified by the caller.

Officer Garcia asked defendant if he was on parole or probation. When defendant stated that he was on probation, the officer detained defendant and asked for the terms of his probation. Defendant's probation contained search terms. The officer conducted a pat-down of defendant's outer clothing. During the search, defendant told the officer he had drugs in his right front pocket. The officer retrieved a plastic bag from the pocket; it contained a substance the officer believed to be methamphetamine. The officer then placed defendant under arrest.

Defendant told Officer Garcia that defendant had found the drugs in his garage 30 minutes earlier. Defendant did not tell the officer that his condominium had been burglarized, or that he was on his way to throw away the drugs. At the time of his arrest, defendant did not exhibit any symptoms of being under the influence.

The contents of the plastic bag were later identified as 1.58 grams of methamphetamine, a usable amount.

At the time of his arrest, defendant was on probation for grand theft. He had a 2010 conviction for felony grand theft and a 2004 felony conviction for breaking into a residence.

C.    DEFENSE EVIDENCE

On June 6, 2014, defendant returned to his home in a condominium complex in a gated community on Lasselle Street. He had been away from his home for about a week. Defendant had lived in that community since 2008.

Defendant noticed that the screen door to his condominium was off of its hinges and the garage door was up. He then realized his condominium had been ransacked. On the floor of his garage, defendant found an overturned tray, beer cans, beer bottles, a "peace pipe" for smoking methamphetamine, and a plastic bag containing drugs. These items did not belong to him. Defendant knew someone had been in his garage.

Defendant picked up the plastic bag with the drugs and put it in his pocket. He planned on throwing the drugs away. Defendant did not call the police or his neighbors. Defendant then went into his condominium to see if anyone was there or if anything had been taken. He noticed some missing items.

6

Defendant then exited the condominium to see if anyone was leaving the scene. He headed towards the mailboxes by the entrance to the community when he received a call on his cell phone. Defendant planned on throwing away the drugs in the dumpster.

At this point, defendant was stopped by a police officer who told defendant that he had received a call involving two suspects and asked if defendant was on probation. Defendant told the officer that he was on probation and that he had a rock on him. Defendant also told the officer that he found the rock in his garage and that his condominium had been burglarized. He asked the officer to investigate the burglary; the officer ignored defendant's request.

Defendant was wearing a black hoodie, but he did not have a flashlight and no knowledge of a white man with a hoodie and flashlight. Defendant was not able to throw the drugs away because the police officer found defendant before he was able to do so.

## DISCUSSION

After defendant appealed, and upon his request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of the case, a summary of the facts and potential arguable issues, and requesting this court to undertake a review of the entire record.

We offered defendant an opportunity to file a personal supplemental brief, and he has done so. On November 24, 2014, defendant filed a four-page handwritten supplemental brief. In his brief, defendant argues that (1) Officer Garcia lied about the

7

amount of methamphetamine he found on defendant, and misconstrued the events that took place; and (2) his counsel rendered ineffective assistance of counsel.

First, we address defendant's complaint regarding Officer Garcia. Defendant contends Officer Garcia was allowed to lie that the methamphetamine he found in defendant's pocket weighed 2.4 grams, while the criminalist, Irene Cabrera, testified it weighed 1.58 grams. After reviewing the record, however, there is nothing from the trial transcript indicating Officer Garcia testified that the methamphetamine weighed 2.4 grams. The only evidence regarding the weight of the methamphetamine introduced to the jury was via Criminalist Cabrera's testimony—1.58 grams. During the preliminary hearing, however, Officer Garcia did testify that he weighed the methamphetamine—2.4 grams with packaging. The methamphetamine, however, was later turned over to the criminalist for testing. Only the result from the testing by the criminalist was presented during trial. Here, Cabrera testified that the methamphetamine weighed 1.58 grams net— "the net means that it is the weight of the item without any packaging. So the substance itself." Defendant's argument regarding the alleged lie by Officer Garcia, therefore, is nonsensical. Officer Garcia's testimony was not presented at trial. Moreover, his testimony only showed his initial investigation on the methamphetamine—he estimated it to be 1 gram higher in weight than the criminalist. This makes sense: the officer's weight for methamphetamine included the packaging while the criminalist's weight did not include the packaging.

8

It also appears defendant is contending that Deputy Garcia's testimony was not credible because it conflicted with defendant's testimony. Credibility issues, however, are issues for the jury to resolve. (*People v. Martinez* (2008) 158 Cal.App.4th 1324, 1331 [resolution of conflicting evidence and credibility issues are for a jury to decide].)

Next, we address defendant's IAC claim. In order to establish a claim of IAC, defendant must demonstrate, "(1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced the defendant, i.e., there is a 'reasonable probability' that, but for counsel's failings, defendant would have obtained a more favorable result. [Citations.] A 'reasonable probability' is one that is enough to undermine confidence in the outcome. [Citations.]" (*People v. Dennis* (1998) 17 Cal.4th 468, 540-541, citing, among other cases, *Strickland v. Washington* (1984) 466 U.S. 668; accord, *People v. Boyette* (2002) 29 Cal.4th 381, 430.) Hence, an IAC claim has two components: deficient performance and prejudice. (*Strickland*, at pp. 687-688, 693-694; *People v. Williams* (1997) 16 Cal.4th 153, 214-215; *People v. Davis* (1995) 10 Cal.4th 463, 503; *People v. Ledesma* (1987) 43 Cal.3d 171, 217.) If defendant fails to establish either component, his claim fails.

In this case, defendant appears to be claiming IAC because (1) his appointed defense counsel was not present at his preliminary hearing and another deputy public defender represented him; (2) counsel gave defendant's "background records" to the prosecutor "to give the D.A. ammo to use against [defendant] for a easy conviction"; and no motions were filed in his defense.

We have reviewed the record and find defense counsel actively and consciously represented defendant throughout the trial court proceedings. Counsel examined and cross-examined the witnesses, and made succinct and persuasive arguments to the trial court. When a claim of ineffective assistance is made on direct appeal, and the record does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation. (*People v. Pope* (1979) 23 Cal.3d 412, 426.) Here, we need not determine if defense counsel's actions fell below an objective standard of reasonableness because defendant cannot demonstrate that counsel's alleged deficient representation prejudiced him, i.e., there is a reasonable probability that, but for counsel's purported failings, defendant would have received a more favorable result. (*People v. Dennis*, *supra*, 17 Cal.4th at pp. 540-541; *Strickland v. Washington*, *supra*, 466 U.S. at p. 687.) Defendant does not even argue how he was prejudiced by his counsel's alleged deficient performance. Here, we find no prejudice. As discussed in detail above, the evidence against defendant was overwhelming—Officer Garcia found a substance in defendant's pocket. This substance later tested positive for methamphetamine. After reviewing the evidence and defendant's argument, we cannot say any of the purported actions by counsel would have changed the outcome of this case. There was no prejudice.

We have now completed our independent review of the record and find no arguable issues.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
_____
J.

We concur:

RAMIREZ
_____
P. J.

McKINSTER
_____
J.

11