Filed 9/11/15  P. v. Harvey CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RICKY LANCE HARVEY,<br><br>    Defendant and Appellant. | G049724<br><br>(Super. Ct. No. 10HF1993)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David A. Hoffer, Judge.  Affirmed.

Laurel M. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Allison V. Hawley, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury found defendant Ricky Lance Harvey guilty of first degree residential burglary (Pen. Code, §§ 459, 460, subd. (a)) and street terrorism (Pen. Code, § 186.22, subd. (a)). On the burglary, the jury also found a gang enhancement allegation (Pen. Code, § 186.22, subd. (b)) to be true. The court found defendant had suffered a prior federal conviction for bank robbery, and denied his motion to strike the prior under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. The court sentenced him to 18 years in state prison on the burglary count and stayed sentencing on the street terrorism count under Penal Code section 654.

In his appeal, defendant contends there is a lack of substantial evidence supporting his convictions for burglary and street terrorism, and the jury's true finding on the gang enhancement. We disagree with all three contentions and affirm the judgment.

FACTS

When witness Arceneaux noticed men walking around a house, he became suspicious and called 911. He gave the operator a description of the car in which the men had arrived, a black Cadillac, including the license plate number. Two men had come out of the car and had approached the house. Arceneaux saw one of the men, his hand covered by a shirt, opening the entrance to the back yard of the house. Thereafter both men entered the house. Arceneaux described one of the men as wearing khaki shorts, red and white shoes, and a long sleeve white shirt.

Arceneaux saw the homeowner return and park his car in the driveway. Thereupon, he saw one of the suspects leave the house through the front door. Later that day, Arceneaux was asked to identify a person. Although he did not recall saying so at the time of the trial, when a deputy sheriff testified that Arceneaux was presented with defendant he said, "'That's him, no doubt in my mind.'"

The homeowner testified he found the doors in the back and the front of the house open. Before leaving, he had locked the doors and closed all the windows. Upstairs, he found jewelry on the floor, clothing that had been removed from the closet, drawers opened in his office, and items scattered about. Upon calling 911, the dispatcher told him to leave the house and he did so. Once outside, he saw his daughter's trick-or-treat bag which contained some of his wife's jewelry.

Deputy Sheriff Manuel Cruz was dispatched to the scene of the suspected burglary and given the description of the suspect's vehicle. A few minutes after arriving at his destination, Cruz saw the vehicle and pursued it. A sheriff's department investigator, who had heard the dispatch, subsequently saw the vehicle and followed it. She lost contact for a short while and then found it again, unoccupied and stopped with the engine running. Yet another sheriff's department employee, Sergeant Brian Heany, who had also heard the dispatch, found a black male, resembling the description given by Arceneaux, on the ground, hiding in some shrubbery and arrested him. Cruz then drove Arceneaux to Heany's location where Arceneaux identified defendant as one of the persons he had seen entering the house.

Officer Christopher Soto, a member of the Los Angeles Police Department, qualified as an expert on gang culture. He provided some history of the Crips and specifically the "East Coast Crips," a criminal street gang in Los Angeles. Soto monitors this gang and has spoken to 50 or 60 of its members. According to Soto, the gang has over 300 members and has existed since the 1970s. Its members wear distinctive clothing. He also described the gang's primary criminal activities, which included crimes committed outside its territory.

Soto identified defendant and the two other men involved in the burglary as members of the gang. He cited several police interviews where defendant identified himself as being a member of the East Coast Crips and claimed he used the gang moniker "Tiny Bam." Soto explained how gang members gain respect by committing crimes.

3

Based on hypothetical facts similar to those involved in the case, Soto expressed the opinion a burglary would benefit the gang.

Defendant testified on his own behalf. He claimed he ceased being active or involved with the East Coast Crips gang after his release from prison. Although he acknowledged having been in the black Cadillac with the two other men, he testified he had understood the purpose of the trip to have been to obtain marijuana and denied any discussion of a burglary. Defendant was the only one of the three persons in the car who had a driver's license. After the police followed their car, he had demanded to be let out and only hid from the police because he realized "the sun was up" and he was on probation. Later, he stated he had hidden because he "knew something was going on."

DISCUSSION

*1. Introduction*

Defendant bases his entire appeal on the argument the evidence was insufficient to support his conviction on each of the charged crimes and the gang enhancement finding. "'When the sufficiency of the evidence is challenged on appeal, the court must review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.' [Citation.] In applying this test, we must 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'" (*People v. Fosselman* (1983) 33 Cal.3d 572, 578.)

*2. Substantial evidence supports the jury's conclusion defendant participated in the burglary.*

Emphasizing the absence of DNA evidence, the absence of fingerprint evidence, and the absence of information from his cell phone, defendant argues there was

insufficient evidence to support his conviction. But, as the Attorney General points out, attempting to place the focus on "missing evidence" does not answer the question whether the evidence that was presented was of sufficient substance to support the conviction. We would be hard put to find a criminal conviction where defendant would be unable to point to absent items of evidence; this is not the test for substantial evidence.

We agree with the Attorney General the evidence identifying defendant as a participant in the burglary is substantial: Arceneaux's physical description to the police of the person he had seen enter the neighbor's house met defendant's appearance when he was apprehended; long sleeve white shirt and red and white shoes. The fact the shoes worn by defendant were actually red and grey does not render Arceneaux's testimony insubtantial. Also, within two hours after the incident, Arceneaux identified defendant: "That's him. No doubt in my mind." Arceneaux claimed loss of memory at the time of the trial, but he acknowledged the information he had given to the police was truthful and accurate. And, although defendant asserted a lack of understanding of the purpose of the trip, he admitted being in the automobile Arceneaux identified as the one used by the burglars. This admission lends further weight to Arceneaux's identification. As the United States Supreme Court held: "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . [is] to determine whether the record evidence could reasonably support a finding of guilty beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 318 [99 S.Ct. 2781, 61 L.Ed.2d 560].) This test was adopted by our Supreme Court in *People v. Towler* (1982) 31 Cal.3d 105, 117.) The evidence presented at trial meets this test.

*3. Substantial evidence supports the jury's conclusion defendant was guilty of street terrorism and acted for the benefit of his gang.*

As we noted, Soto qualified as an expert on the East Coast Crips gang culture. He expressed the opinion defendant belonged to the East Coast Crips and based

5

this, in part, on defendant's admission of such membership, his association with other gang members in the commission of the crime, and his having gang tattoos. Soto opined the two other men involved in the burglary were also East Coast Crips members and identified the information upon which he based this opinion. He explained how gang members gained respect by committing crimes.

"Under [Penal Code] section 186.22[, subdivision] (a), to be convicted of street terrorism a person must 'actively participate[] in a[] criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and . . . willfully promote[], further[], or assist[] in any felonious criminal conduct by members of that gang . . . .' '[A] person "actively participates in any criminal street gang," . . ., by "involvement with a criminal street gang that is more than nominal or passive."'" (*People v. Martinez* (2008) 158 Cal.App.4th 1324, 1329.) In addition, to the evidence supporting the jury's guilty verdict on the residential burglary charge, Soto's expert testimony provided a basis for the jury to find the East Coast Crips was a criminal street gang, defendant actively participated in gang activities, and that the other persons who participated in the burglary with him also belonged to this gang. (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1132 ["The plain meaning of section 186.22(a) requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member"].) Thus, the evidence supports defendant's conviction for street terrorism.

The same is true for the gang enhancement. "As we have previously explained, the Legislature included the requirement that the crime to be enhanced be committed for the benefit of, at the direction of, or in association with a criminal street gang to make it 'clear that a criminal offense is subject to increased punishment . . . if the crime is "gang related."'" (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) One way a crime can be found to be gang related is where it is "committed in association with the gang." (*Ibid.*; *People v. Martinez, supra,* 158 Cal.App.4th at p. 1332 ["'[T]he jury could

6

reasonably infer the requisite association from the very fact that defendant committed the charged crimes in association with fellow gang members'"].) As noted, Soto opined the other burglars belonged to the East Coast Crips and explained the basis for his opinion. "The elements of the gang enhancement may be proven by expert testimony." (*People v. Martinez, supra,* 158 Cal.App.4th at p. 1332.)

DISPOSITION

The judgment is affirmed.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

BEDSWORTH, J.

THOMPSON, J.

7