Filed 9/14/20  P. v. Covarrubias CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>NAIN MARTIN COVARRUBIAS,<br><br>    Defendant and Appellant. | F077157<br><br>(Super. Ct. No. CRM022837)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Ronald W. Hansen, Judge.  (Retired judge of the Merced Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Matthew H. Wilson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler and Lance E. Winters, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Jennifer Oleksa, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

A jury convicted appellant Nain Martin Covarrubias of attempted murder (Pen. Code, §§ 664/187, subd. (a);[1] count 1), finding true that he personally discharged a firearm that caused great bodily injury (§ 12022.53, subd. (d)), and he committed this crime to benefit the Sureño street gang (§ 186.22, subd. (b)(1)).[2] The court sentenced appellant to a determinate term of 34 years. This consisted of an upper term of nine years for the attempted murder, doubled because of a prior strike conviction. The gang enhancement added 10 years, a prior serious felony conviction enhancement (§ 667, subd. (a)(1)) added five years, and a prior prison term enhancement (§ 667.5, subd. (b)) added one year. Finally, because of the firearm enhancement, appellant received a consecutive indeterminate term of 25 years to life (§ 12022.53, subd. (d)).

Appellant raises a number of issues, and some of his claims have merit. We agree with the parties that appellant no longer qualifies for the prior prison term enhancements[3] (§ 667.5, subd. (b)). We also agree with appellant that the evidence is insufficient to support the jury's true findings regarding the gang enhancements; he acted alone when he committed this crime, he made no gang-related statements or slurs, and he was not encouraged or assisted by other gang members. We will vacate appellant's sentence and remand this matter for resentencing, at which time the trial court shall strike these various enhancements. At resentencing, the court shall also exercise its discretion under Senate

---

[1]    All future statutory references are to the Penal Code unless otherwise noted.

[2]    In count 2, the jury convicted appellant of assault with a firearm (§ 245, subd. (a)(2)) stemming from the same shooting and involving the same victim. For this count, the jury found true a firearm enhancement (§ 12022.5, subd. (a)); a gang enhancement (§ 186.22, subd. (b)(1)); and that appellant personally inflicted great bodily injury (§ 12022.7, subd. (a)). The court imposed an aggravated sentence of 32 years in this count, which was stayed pursuant to section 654.

[3]    In addition to the one-year enhancement imposed in count 1, the trial court stayed an additional one-year prior prison term enhancement in count 2.

Bill No. 1393 (2017–2018 Reg. Sess.) (Senate Bill 1393) regarding the five-year enhancement under section 667, subdivision (a)(1).  In all other respects, we affirm.

## BACKGROUND

### I. Appellant Is A Gang Member.

It is undisputed that appellant was a gang member when this shooting occurred. The prosecution's gang expert had supervised appellant while he was on parole.  Based on various factors, including his prior contacts with appellant and appellant's tattoos, the expert opined at trial that appellant was a gang member with Los Primos, a subset of the Sureño gang.

### II. This Shooting Occurred In Sureño Gang Territory.

This shooting occurred in a mobilehome park where the victim lived.  This park was territory for members of the Sureño gang.  Certain graffiti in the mobilehome park had suggested that Sureño gang members had intended to kill a rival Norteño gang member.

The victim was not involved in gangs, and he had no gang tattoos.  However, after he moved into the park, the victim and his family were harassed by Sureños, who seemed to believe that he was a rival Norteño gang member.[4]  At times, the victim was threatened with violence by Sureños.

Appellant spent time in this mobilehome park with a female who lived there.  The victim testified at trial that appellant had never spoken to him before this shooting.  The victim denied that appellant had ever harassed him.  The park manager testified that she was not certain whether appellant had participated in any of the previous harassment

---

[4] The jury learned that the victim's hairstyle was one reason why he may have been targeted as a rival Norteño gang member.  The victim had worn his hair "longer" and "with braids."  A Norteño gang member in that area often wore longer hair.  In contrast, Sureño gang members in the area typically shaved their heads.

involving the victim of this shooting. She confirmed, however, that she had never seen appellant doing any of the gang-related graffiti in the park.

## III.    The Attempted Murder.

The shooting occurred just after midnight on March 29, 2012. The victim heard a knock on his door. He asked who was there, but no one answered. When he asked again, he heard someone ask for "Jose." The victim had a younger brother with that name so he opened the door. Without warning, the victim heard two bangs. In "a daze" he realized he had been shot. The victim's family found the victim on the floor, and they called for assistance.

The victim suffered a bullet wound to his face near his upper lip. He was also shot in the upper shoulder area. Emergency personnel responded to the scene.

## IV.    The Victim Identifies Appellant As The Shooter.

The victim told police that his shooter was a Hispanic male, about five feet 11 inches tall, with a bald head. The shooter had a large tattoo that extended from his chin to the bottom of his neck.[5] The victim suspected that the shooter was a Sureño gang member. The victim had seen the shooter before in the mobilehome park.

About three weeks after this shooting, law enforcement showed the victim a photographic lineup. None of these photos showed appellant. The victim did not identify any of these suspects as the shooter. A few weeks later, the victim was shown a new photographic lineup of six suspects, which included appellant. All of these suspects had neck tattoos. The victim selected appellant's photograph and stated, "This is the person that shot me."

At trial the victim identified appellant as the person who had shot him. He told the jury that he had a good look at the shooter's face before he was shot. He had recognized him from someone who spent time at the mobilehome park.

---

[5]    The victim's description matches a photograph of appellant.

4.

## V.    Appellant's Prior Criminal Conduct.

The jury learned that, in 2004, appellant had participated with others in threatening someone with a firearm. This incident had occurred at the same mobilehome park where the present shooting took place.[6] Like the victim in the present shooting, the 2004 victim had not been involved in gang activity. Prior to threatening that prior victim with a firearm, appellant and other "Southerners" had harassed that victim in the mobilehome park.

Shortly after appellant (along with others) had threatened this prior victim with a firearm, law enforcement stopped a vehicle that matched a description of the suspects' vehicle. Appellant and other males were taken into custody. When stopped by police, appellant uttered a gang slur and he flashed a gang sign. Gang-related items were found in the vehicle, and additional gang-related items were later recovered at appellant's residence. Appellant admitted to an officer that he and the other males in the vehicle were Sureños.

## VI.    The Defense Case.

The defense presented an expert who testified about the unreliability of eyewitness identifications, and the factors that can taint memories. During closing argument, the defense noted that no physical evidence connected appellant to this shooting. The defense asserted, in part, that the victim's identification was false regarding the identity of his shooter. The defense also argued that the law enforcement investigation had been flawed.

---

[6]    Stemming from this incident, appellant received a felony conviction in 2005 for making a criminal threat (§ 422, subd. (a)), along with a gang enhancement (§ 186.22, subd. (b)(1)).

## DISCUSSION

**I.**   **The Jury's True Findings For The Gang Enhancements Must Be Stricken Due To Insufficient Evidence.**

Appellant seeks reversal of the gang enhancements. He argues the evidence was insufficient to support a finding that he acted with the specific intent to promote, further, or benefit a gang.

### A.   The standard of review.

The substantial evidence standard of review applies to gang enhancements. (*People v. Martinez* (2008) 158 Cal.App.4th 1324, 1329.) When considering a challenge to the sufficiency of the evidence to support a conviction, we review the record in the light most favorable to the judgment and decide whether it contains substantial evidence from which a reasonable finder of fact could make the necessary finding beyond a reasonable doubt. The evidence must be reasonable, credible and of solid value. We presume every inference in support of the judgment that the finder of fact could reasonably have made. We do not reweigh the evidence or reevaluate witness credibility. We cannot reverse the judgment merely because the evidence could be reconciled with a contrary finding. (*People v. D'Arcy* (2010) 48 Cal.4th 257, 293.) The standard of review is the same in which a conviction is based primarily on circumstantial evidence. (*People v. Clark* (2016) 63 Cal.4th 522, 625.)

#### 1.   An overview of gang enhancements.

To establish a gang enhancement, the prosecution must prove two elements: (1) the crime was "committed for the benefit of, at the direction of, or in association with any criminal street gang," and (2) the defendant had "the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).) The crime must be "gang related." (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) However, not every crime committed by gang members is gang related. (*Ibid.*) A defendant's mere membership in a gang is not sufficient to support a gang enhancement.

6.

(*People v. Gardeley* (1996) 14 Cal.4th 605, 623–624 disapproved on other grounds by *People v. Sanchez* (2016) 63 Cal.4th 665, 686, fn. 13; *In re Frank S.* (2006) 141 Cal.App.4th 1192, 1199 (*Frank S.*).) Instead, the charged crime must have some connection with the activities of a gang.[7] (*Frank S.*, *supra*, at p. 1199; accord, *People v. Martinez* (2004) 116 Cal.App.4th 753, 762 [§ 186.30 context].)

## 2. The facts from this matter.

Appellant concedes that the prosecution established he was a Los Primos gang member, which is a subset of the Sureño gang. He further acknowledges that the Sureño gang had been active in the area of the mobilehome park where this shooting occurred. Finally, he admits that other individual Sureños had previously harassed the victim and his family. However, he argues that nothing demonstrates his specific intent to shoot the victim to benefit his gang.

In contrast, respondent contends that, stemming from the strong gang activity around the mobilehome park, an inference exists that appellant shot the victim to benefit his gang, which is the only apparent motive for this crime. According to respondent, it was reasonable for the jury to infer that appellant was "intimately connected" to the Sureño gang members who dominated this mobilehome park. Respondent also notes that, in 2004, appellant had targeted a prior victim at the same mobilehome park, and that prior victim was also a suspected rival gang member. Respondent argues it is reasonable to infer that appellant targeted the victim of this shooting for the same reason.

---

[7] The prosecution must also prove that "the gang (1) is an ongoing association of three or more persons with a common name or common identifying sign or symbol; (2) has as one of its primary activities the commission of one or more of the criminal acts enumerated in the statute; and (3) includes members who either individually or collectively have engaged in a 'pattern of criminal gang activity' by committing, attempting to commit, or soliciting two or more of the enumerated offenses (the so-called 'predicate offenses') during the statutorily defined period." (*People v. Gardeley*, *supra*, 14 Cal.4th at p. 617, italics omitted.)

We reject respondent's various arguments and we agree with appellant that the gang enhancements must be stricken. Although other Sureño gang members had harassed the victim and his family prior to this shooting, nothing (except for his gang membership) linked appellant to that prior harassment. Nothing shows that other gang members had directed or encouraged appellant to commit this crime. Nothing establishes that appellant committed this crime in concert with anyone else, let alone other gang members. Nothing suggests that other gang members may have provided the firearm to appellant, acted as a lookout during the crime, helped him flee, or hid the firearm afterwards.

When shooting the victim, appellant neither called out a gang name, uttered a gang slur, nor flashed any gang signs. Nothing suggests that appellant was wearing gang-related clothing or otherwise promoting a gang when he committed this crime. Finally, there was no evidence that any gang took credit for this shooting. Nothing suggests that gang-related bragging or graffiti occurred after this attack.

Respondent contends that the manager at the mobilehome park testified that the victim had told her before the shooting that appellant and his girlfriend had once walked past the victim and questioned him about his gang membership. Based on this testimony, respondent argues that appellant was linked to the prior gang harassment of the victim.

We disagree with respondent's view of the record. The testimony which respondent relies upon occurred outside the jury's presence. Moreover, the victim testified at trial that appellant had never spoken to him before this shooting. The victim also denied that appellant had ever harassed him. Finally, the park manager testified that she was not certain whether appellant had participated in any of the previous harassment involving the victim of this shooting. She confirmed, however, that she had never seen appellant doing any of the gang-related graffiti in the park. In short, the jury received no evidence that reasonably connected appellant to the prior harassment which the victim endured from other Sureño gang members.

8.

Citing *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*), respondent argues that, even though appellant acted alone and "apparently without announcing his gang affiliation[,]" it is still proper to impose the gang enhancements. We disagree. As an initial matter, *Rodriguez* makes it clear that a gang enhancement may be imposed when a gang member acts alone in committing a crime. (*Id*. at p. 1139.) However, the defendant must nevertheless commit a felony that is gang related, and the defendant must act with the specific intent to promote, further or assist the gang. (*Ibid*.) These requirements "provide a nexus to gang activity sufficient to alleviate due process concerns." (*Ibid.*)

Contrary to respondent's assertions, the required evidentiary nexus is lacking in this matter. While it is possible appellant shot the victim to benefit a gang, it is also possible that appellant shot the victim for any number of personal reasons, including mistaken identity or a need to prove something to himself. In either event, a mere possibility is nothing more than speculation, and speculation does not amount to substantial evidence. (*People v. Ramon* (2009) 175 Cal.App.4th 843, 851.) Further, a reasonable inference may not be based on suspicion, imagination, speculation, supposition, surmise, conjecture, or guess work. Instead, a finding of fact must be an inference drawn from evidence rather than mere speculation as to probabilities without evidence. (*Ibid.*)

We note that gang membership by itself is insufficient to support an inference that a crime was committed to benefit a gang, even if the perpetrator has a criminal history. (*People v. Perez* (2017) 18 Cal.App.5th 598, 607; see *People v. Rios* (2013) 222 Cal.App.4th 542, 573–574.) Although a gang enhancement may be imposed upon a lone actor, "merely belonging to a gang at the time of the commission of the charged conduct does not constitute substantial evidence to support an inference the sole actor specifically intended to promote, further, or assist any criminal conduct by gang members." (*People v. Perez*, *supra*, 18 Cal.App.5th at p. 607.) Our Supreme Court makes it clear that

"[m]ere active and knowing participation in a criminal street gang is not a crime." (*Rodriguez*, *supra*, 55 Cal.4th at p. 1130.)

Here, this shooting occurred in Sureño gang territory, and some evidence suggests that appellant may have had a gang motive to commit this crime. However, nothing establishes that this attempted murder was actually gang related or that appellant held a specific intent to benefit a gang. (See *Rodriguez*, *supra*, 55 Cal.4th at p. 1139.) Instead, it appears that the jury found the gang enhancements true based either on appellant's mere gang membership and/or his prior criminal conduct in 2004.[8]

Viewing the evidence in the light most favorable to the judgment, substantial evidence neither demonstrates nor reasonably infers beyond a reasonable doubt that appellant committed this crime for the benefit of, at the direction of, or in association with any criminal street gang. Moreover, nothing reasonably establishes that appellant held a specific intent to promote, further, or assist in any criminal conduct by gang members. (§ 186.22, subd. (b)(1); see *People v. Rios*, *supra*, 222 Cal.App.4th at pp. 573–574; *People v. Ochoa* (2009) 179 Cal.App.4th 650, 662–663; *People v. Ramon*, *supra*, 175 Cal.App.4th at p. 851; *Frank S.*, *supra*, 141 Cal.App.4th at p. 1199.) Thus, these enhancements must be reversed due to insufficient evidence, which bars retrial. (*People v. Garcia* (2014) 224 Cal.App.4th 519, 526.) Accordingly, we remand this matter for the trial court to strike the gang enhancements and to resentence appellant.[9]

---

[8] In section V., below, we address appellant's claim that the trial court abused its discretion in permitting the jury to hear evidence about appellant's prior criminal conduct from 2004, which suggested that he may have had a gang motive to commit the present crime. We conclude that the court did not abuse its discretion regarding its evidentiary ruling.

[9] Because the evidence is insufficient to establish appellant's specific intent for the gang enhancements, we do not address appellant's alternative argument that the prosecution failed to establish it was appellant's gang, the Los Primos subset of the Sureños, which appellant sought to benefit. We also do not address appellant's arguments that the prosecution failed to establish the required connection between the

## II. Appellant's Prior Prison Term Enhancements Must Be Stricken.

In a bifurcated proceeding, the trial court found true that appellant had suffered a prior conviction for which he had served a prison term (§ 667.5, subd. (b)). As part of his determinate term, the court imposed a one-year enhancement for this prior prison term. Another such enhancement was stayed.

In October 2019, the Governor signed Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill 136) into law. (*People v. Lopez* (2019) 42 Cal.App.5th 337, 340.) This amended section 667.5, subdivision (b), which deals with prior prison enhancements. Following the amendment, prior prison enhancements only occur if the prior prison term was for a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b). (*People v. Lopez*, *supra*, 42 Cal.App.5th at pp. 340–341.)

At our request, the parties filed supplemental briefing regarding the impact of Senate Bill 136 in this matter. The parties agree, as do we, that appellant benefits from this change in law. His prior prison term was not for a sexually violent offense. We also agree with the parties that this change in law applies retroactively to appellant because his case is not yet final. As such, appellant's prior prison enhancements (§ 667.5, subd. (b)) must be stricken when appellant is resentenced.

## III. The Court Shall Exercise Its Discretion Under Senate Bill 1393.

Effective January 1, 2019, Senate Bill 1393 (2017–2018 Reg. Sess.) granted trial courts the discretion to strike or dismiss the previously mandatory five-year prior serious felony conviction enhancement under section 667, subdivision (a)(1). (*People v. Ellis* (2019) 43 Cal.App.5th 925, 928.) The parties agree, as do we, that this amendment applies retroactively to appellant. Respondent, however, contends that remand is not warranted for the court to exercise this new discretion. Respondent focuses on the sentencing record wherein the court commented on the egregious nature of appellant's

Los Primos gang and the larger Sureño gang as required under *People v. Prunty* (2015) 62 Cal.4th 59.

crime, the court declined to strike a prior strike conviction, and the court imposed an upper term sentence.

Although the court's prior sentencing choices suggest it may not exercise its discretion favorably for appellant, we are remanding this matter for resentencing based on other issues. Thus, it is appropriate under these circumstances for the court to exercise its discretion under Senate Bill 1393 when it resentences appellant. We express no opinion regarding how the court should exercise that discretion.

**IV.     Appellant Has Forfeited His Claim Of Alleged Prosecutorial Misconduct And He Does Not Establish Ineffective Assistance Of Counsel.**

Appellant contends that the prosecutor committed misconduct during closing argument. He seeks reversal of his convictions.

### A.     Standard of review.

To prevail on a claim of prosecutorial misconduct based on remarks to the jury, a defendant must show a reasonable likelihood the jury understood or applied the disputed comments in an improper or erroneous manner. (*People v. Centeno* (2014) 60 Cal.4th 659, 667.) We must examine the prosecutor's entire argument and the jury instructions. (*Ibid.*)

### B.     The prosecutor's disputed comment.

During closing argument, the prosecutor discussed the mobilehome park where this shooting had occurred. In part, he stated that "there's a variety of witnesses who won't testify." The prosecutor noted that the area around the mobilehome park was considered Sureño turf, especially for the Los Primos gang.

### C.     Analysis.

Appellant asserts that the prosecutor's comment suggested the prosecutor had additional witnesses who refused to testify over fear of retaliation. He argues that this comment was prejudicial to him.

In contrast, respondent argues, in part, that appellant has forfeited this claim due to a failure to object below. To overcome respondent's arguments, appellant raises ineffective assistance of counsel. In the alternative, appellant asserts that the alleged misconduct was so severe that the trial court should have intervened. Finally, appellant asks this court to review this matter on its merits, contending the issue involves a fundamental constitutional right.

Due to a failure to object below, we agree with respondent that appellant has forfeited this claim, and we will not review its merits. Moreover, this record does not demonstrate ineffective assistance of counsel.

### 1. Appellant has forfeited this claim.

As a rule, a claim of prosecutorial misconduct is forfeited if the defense fails to object and request an admonition to cure any harm. (*People v. Centeno*, *supra*, 60 Cal.4th at p. 674; *People v. Tully* (2012) 54 Cal.4th 952, 1010.) Our Supreme Court makes it clear that a claim of prosecutorial misconduct will not be deemed forfeited only if an objection would have been futile or an admonition ineffective. (*People v. Thomas* (2012) 54 Cal.4th 908, 937.)

In this matter, it is undisputed that the defense failed to object or seek an admonition when the prosecutor made his disputed statement. The prosecutor's brief statement was not so severe or pervasive that a timely objection or admonition could not have cured any alleged harm. As such, we decline appellant's invitation for us to review this matter despite his failure to object below. This situation does not present an unusual circumstance where defense counsel may be excused from the legal obligation to raise an objection, and we see no reason to carve out an exception to the general rule that a defendant must object to misconduct to preserve the claim on appeal. (*People v. Cleveland* (2004) 32 Cal.4th 704, 762; *People v. Riel* (2000) 22 Cal.4th 1153, 1212–1213.) Thus, this claim is forfeited.

13.

### 2. Appellant does not establish ineffective assistance of counsel.

Appellant argues that his defense counsel could have had no reasonable tactical reason not to object to the prosecutor's disputed statement. We disagree.

Our Supreme Court holds that a mere failure to object to evidence or argument seldom establishes that a defense counsel was incompetent. (*People v. Centeno*, *supra*, 60 Cal.4th at p. 675; *People v. Ghent* (1987) 43 Cal.3d 739, 772.) A reasonable defense attorney may decide not to object to an isolated comment from the prosecutor in order to avoid drawing closer attention to that issue. (*People v. Ghent*, *supra*, 43 Cal.3d at pp. 772–773.)

Here, a reasonable defense attorney could have made a tactical decision not to object to the prosecutor's brief and isolated statement. (See *People v. Ghent*, *supra*, 43 Cal.3d at pp. 772–773.) Because the decision to object is inherently tactical, especially when it involves an isolated issue, we agree with respondent that a conceivable reason exists why defense counsel may have remained silent. As such, this record does not demonstrate that defense counsel's performance fell below an objective standard of reasonable competence. Thus, appellant has not met his burden of establishing deficient performance, which is a required element to establish ineffective assistance of counsel. (See *Strickland v. Washington* (1984) 466 U.S. 668, 687–688; *People v. Lucas* (1995) 12 Cal.4th 415, 436.) Consequently, ineffective assistance of counsel is not present, and this claim fails.

## V. The Trial Court Did Not Abuse Its Discretion In Permitting Introduction Of Evidence Regarding Appellant's Prior Criminal Conduct.

Appellant asserts that the trial court erred in permitting the prosecution to introduce evidence regarding his prior criminal conduct in 2004. He contends that this evidentiary ruling was prejudicial and deprived him of due process. He seeks reversal of his conviction.

### A. Standard of review.

We review relevancy and Evidence Code section 352 rulings involving gang evidence for abuse of discretion. (*People v. Montes* (2014) 58 Cal.4th 809, 859–860; *People v. Clair* (1992) 2 Cal.4th 629, 660.) A trial court abuses its discretion when its ruling is outside the bounds of reason. (*People v. Waidla* (2000) 22 Cal.4th 690, 714.) We will not disturb a court's decision on appeal unless it exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125.)

### B. Appellant's prior criminal conduct.

The jury heard evidence about a 2004 incident involving appellant, wherein he and others (including his brother) had threatened someone with a firearm. This incident had occurred at the same mobilehome park where the present shooting took place. We summarize the court's ruling, the instructions provided to the jury about this issue, and the relevant testimony about this prior incident.

#### 1. The trial court's ruling.

Prior to trial, the prosecutor asserted that evidence about appellant's 2004 criminal conduct was relevant to show his gang motive to commit the shooting charged in this matter. The prosecutor also argued that this prior incident showed appellant's connection to the mobilehome park where the present shooting had occurred.

The court determined that appellant's prior conduct was relevant to show his motive to protect a gang territory or in "addressing suspected rivals." The court, however, had concerns about the passage of time from the prior 2004 incident to the present charges. The court allayed those concerns, noting that appellant had been in prison for the "bulk" of that time. The court believed the jury would not "rubber stamp" appellant's guilt in the current charges based on this prior incident.

The court later revisited this issue. The court noted that the prior incident was relevant to establish appellant's motive to protect the gang territory at the mobilehome

park. The court concluded that the central issue at trial was the identity of the victim's shooter. The court did not believe that the jury would be confused by admission of the prior incident because identity was the "whole issue of this case." The court also felt that the prior incident was "far less inflammatory than the current crime." The court ruled that it would allow testimony about the prior incident under Evidence Code section 1101, subdivision (b).[10]

### 2. The court's initial admonishment to the jury.

Just prior to the introduction of testimony about this prior incident, the court admonished the jury that this evidence could be used only for a very limited purpose. The court stated that this testimony would involve "additional evidence regarding gang activity, and you're reminded that this evidence of gang activity cannot be used to show that [appellant] is a person of bad character or that he is a person who has a propensity to commit the crime … of shooting [the victim]." The court reminded the jurors that the identity of appellant as the shooter in the charged attempted murder was the first issue to decide. The court stated that this evidence dealt with the gang allegations, which the jurors should not decide unless the evidence established beyond a reasonable doubt that appellant was the shooter in the charged attempted murder. The court concluded its comments again noting that "this evidence cannot be used to show [that appellant] had a propensity to commit the crime or that he is a person of bad character."

### 3. The testimony about this prior incident.

The victim from that prior incident, J.O., testified at trial that he had lived in the same mobilehome park in 2004 where the present shooting had taken place. According

---

**10** Under Evidence Code section 1101, subdivision (a), evidence of a person's character (or a trait) is inadmissible to prove his or her conduct on a specific occasion. However, under Evidence Code section 1101, subdivision (b), evidence that a person committed a crime is admissible to prove some other fact, such as motive, opportunity or intent, among other listed factors.

to J.O., two brothers had pulled a gun on him in 2004 at the mobilehome park. A police officer responded and he stopped a vehicle that matched a description provided by dispatch. Appellant was inside that vehicle, along with his brother and two other men.

When one of the passengers (not appellant) exited the vehicle, a firearm fell onto the ground. That was recovered, along with a second firearm found inside the vehicle. Both firearms were loaded. The officer found gang-related items inside the vehicle. "Sur 13" was written on a CD case and on the butt of one of the recovered firearms. In addition, some blue bandanas, and a blue belt with the word "Primos" on it, were recovered from inside the vehicle. When appellant got out of the vehicle, he said, "Fuck you. Sur Trece."[11] He also displayed a gang sign. Appellant admitted to the officer that the suspects in this vehicle were Sureños. After the stop, an officer went to appellant's residence, where additional gang-related items were recovered. One item was a "pledge of allegiance" to the Sureño gang. The pledge expressed hatred for Norteños, and it encouraged killing them.

### 4.      The relevant jury instruction.

During formal jury instructions, the court informed the jury that the prosecution had presented evidence that appellant had committed a criminal threat under section 422, and that crime was committed for the benefit of a criminal street gang in violation of section 186.22, subdivision (b)(1). The jurors were told to consider this evidence only if the prosecution had proved beyond a reasonable doubt that appellant had in fact committed the offense. The jurors were informed that the prior incident was not sufficient by itself to prove that appellant was guilty of attempted murder and/or assault with a firearm. The jurors were told not to conclude from the prior incident that appellant has a bad character or is disposed to commit crime.

---

[11]      At trial, the officer told the jury that he speaks Spanish. He stated that "Sur" means "south. 'Trece' is the word for the number 13." With another witness, the jury learned that the number 13 is reference to the Mexican Mafia and the Sureño gang.

## C. Analysis.

Appellant argues that the court's evidentiary ruling was in error. He contends that the facts from the prior incident were "too similar" to the shooting charged in this matter. He asserts that, notwithstanding the limiting instructions, the jury likely used the 2004 incident as propensity evidence, leading to his conviction.

We disagree that the court abused its discretion in permitting admission of this evidence. In general, the prosecution is entitled to introduce evidence of gang affiliation and activity when such evidence is relevant to prove some fact other than the defendant's disposition to commit the charged crime. (*People v. Valdez* (2012) 55 Cal.4th 82, 131; *People v. McKinnon* (2011) 52 Cal.4th 610, 655.) Gang evidence is admissible to prove motive or identity as long as the prejudicial effect does not outweigh its probative value. (*People v. Williams* (1997) 16 Cal.4th 153, 193.)

Our Supreme Court has cautioned that trial courts should "carefully scrutinize" gang evidence, even where gang membership is relevant, because it may have a highly inflammatory impact on the jury. (*People v. Williams*, *supra*, 16 Cal.4th at p. 193.) However, wide latitude is permitted in admitting evidence of motive because a motive is ordinarily the incentive for criminal behavior. (*People v. McKinnon*, *supra*, 52 Cal.4th at p. 655.) "Gang evidence is relevant and admissible when the very reason for the underlying crime, that is the motive, is gang related." (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1167.)

In this matter, appellant's prior criminal conduct occurred at the same mobilehome park where this present shooting took place. Like the present matter, the victim in the prior incident was a suspected rival gang member. Those similarities made appellant's prior conduct material in this trial because it strongly suggested a gang-related motive for

him to commit the charged attempted murder.[12] Thus, we agree with the trial court that evidence about this prior incident was relevant. (See Evid. Code, § 210.)

The court repeatedly advised the jury that the issue in this trial was the identity of the victim's shooter. The court admonished the jury that appellant's prior criminal conduct could not be used to establish his guilt. Instead, before considering the gang allegations, the jury had to first determine beyond a reasonable doubt that appellant was the shooter charged in this matter.

Although appellant's prior criminal conduct involved threatening a victim with a firearm, that prior incident was very different from the attempted murder charged in this case. Appellant's behavior during the 2004 incident was far less egregious and shocking than the apparently unprovoked and senseless shooting that occurred in this matter. As such, it does not appear reasonably likely that the jury would have been confused or misled by the admission of this evidence as they considered whether or not appellant was guilty of attempted murder. Instead, as the court repeatedly pointed out, the real issue at trial was the identity of the shooter, and the victim provided overwhelming testimony establishing it was appellant who shot him.

Finally, it does not appear that this evidence necessitated an undue consumption of time. In addition, the court was correct that, although the 2004 incident was relatively old, appellant had spent a majority of that time in prison, and he had been out of prison for less than a year when he shot the victim in this matter. Consequently, we agree with the court that evidence about appellant's prior criminal conduct was not more prejudicial than probative. (See Evid. Code, § 352.)

---

**12** As we discussed earlier in this opinion, although appellant's prior criminal conduct provided an inference of a possible gang-related motive for this shooting, no other evidence demonstrated beyond a reasonable doubt that appellant actually committed this attempted murder to benefit his gang (§ 186.22, subd. (b)(1)).

Based on this record, the trial court's evidentiary ruling was not outside the bounds of reason. (See *People v. Waidla*, *supra*, 22 Cal.4th at p. 714.) The court did not exercise its discretion in an arbitrary, capricious or patently absurd manner. (See *People v. Rodrigues*, *supra*, 8 Cal.4th at pp. 1124–1125.) Thus, an abuse of discretion is not present. Consequently, appellant's arguments are without merit, and this claim fails.[13]

## VI.   The Trial Court Did Not Abuse Its Discretion Regarding Appellant's Prior Strike Conviction; Appellant Has Forfeited A Claim That His Sentence Represents Cruel And Unusual Punishment.

Appellant asserts that the trial court abused its discretion in denying his motion pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). In that motion, appellant sought to strike his 2005 conviction for making a criminal threat (§ 422, subd. (a)).[14] He also contends that his resulting sentence represents cruel and unusual punishment under the federal Constitution. He requests that this matter be remanded for a new sentencing hearing.

### A.   The standard of review.

We review under the deferential abuse of discretion standard a trial court's failure to dismiss or strike a prior conviction allegation. (*People v. Carmony* (2004) 33 Cal.4th 367, 375.)

### B.   Analysis.

Appellant argues that an abuse of discretion occurred because his prior strike conviction was about 13 years old when he was sentenced in this matter. He also contends this prior conviction was not a very "serious felony" when compared to the other listed strike offenses under section 1192.7, subdivision (c). He notes that his

---

[13]    Because the court did not abuse its discretion, we do not address appellant's arguments regarding prejudice.

[14]    This conviction stemmed from the 2004 incident about which the jury received evidence regarding appellant's prior conduct.

combined determinate and indeterminate sentence in this matter will result in his incarceration of at least 59 years in prison, which he contends will effectively result in his death because he was 33 years old at sentencing. He asserts it is not likely he will reoffend if he was released from prison in his 60's or 70's. He maintains that the sentence he received is not commensurate with either his prior record or the offenses he committed. He urges this court to find an abuse of discretion.

### 1.        Background on the Three Strikes law.

"The 'Three Strikes' law prescribes increased punishment for a person who is convicted of a felony after having been previously convicted of specified offenses." (*People v. Murphy* (2001) 25 Cal.4th 136, 139.) Section 1385, subdivision (a), gives the trial court the discretion to strike an allegation that a defendant has previously been convicted of a felony if the dismissal is in furtherance of justice. (*Romero*, *supra*, 13 Cal.4th at p. 508.) "[T]he order striking such allegations … embodies the court's determination that, ' "in the interest of justice" [the] defendant should not be required to undergo a statutorily increased penalty which would follow from judicial determination of [the alleged] fact.' " (*Ibid.*, first bracketed insertion added.)

"[T]he Three Strikes law was devised for the 'revolving door' career criminal, and was expressly intended 'to ensure longer prison sentences … for those who commit a felony' as long as they were previously convicted of at least one strike. [Fns. omitted.]" (*People v. Strong* (2001) 87 Cal.App.4th 328, 331–332 & fn. 5.) Our Supreme Court has declared that the purpose of the Three Strikes law is to punish recidivism, and it focuses on the status of a defendant as a repeat felon. (*People v. Murphy*, *supra*, 25 Cal.4th at p. 155.)

In deciding whether to strike a prior conviction, "the court in question must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his

21.

background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

Two fundamental precepts guide our appellate review. First, the appealing party bears the burden " ' "to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citation.]" (*People v. Carmony*, *supra*, 33 Cal.4th at pp. 376–377.) "Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

### 2.     The facts of appellant's case.

In declining to strike the prior strike conviction, the trial court focused on appellant's criminal history. The court determined that appellant came within the spirit of the Three Strikes law. This record supports the court's conclusion.

Appellant was born in 1984, and he was approximately 33 years old at the time of this sentencing. He has a relatively lengthy criminal history.

While appellant was a juvenile, the probation department received 16 referrals from December 1999 to September 2001. An additional seven supplemental petitions were filed from March 2000 to February 2001. These alleged nine different violations of probation. Appellant's juvenile history includes referrals for numerous violent incidents, including assault with force likely to produce great bodily injury, fighting in public,

assault and battery, and resisting, obstructing or delaying a peace officer. He was adjudged a ward of the court in February 2000, and committed to the California Youth Authority (CYA) in November 2001. He was paroled from CYA in July 2004. In October 2008, however, he was discharged and/or transferred to the California Department of Corrections (CDC).

Appellant's adult criminal history started in 2004 when he was arrested for making terrorist threats with a gang enhancement (the prior criminal conduct which was introduced in this trial). He was convicted of that charge in 2005 and committed to CDC for six years. In 2006, he was convicted of assault by a prisoner. In 2011, appellant had an unknown parole violation. Appellant then committed the present offenses in 2012. It appears that appellant was out of prison for less than a year when he shot the victim in this matter.

Although appellant's prior felony strike was relatively old, he has a clear history of continuous criminal conduct, including repeated acts of violence. He has poor performance on probation and parole. His present crime involved an egregious unprovoked attempted murder which occurred very shortly after he was released from prison. When denying the *Romero* motion, the trial court noted that appellant had a seven-year gap between the strike conviction and the current offense. However, he had been in custody for "the bulk of that period."

We presume the trial court acted to achieve legitimate sentencing objectives. Appellant's actions in this matter, and over his adult lifetime, establish that he is a danger to society, and he has neither been rehabilitated nor deterred from further criminal activity as a result of his past imprisonments. He is a career criminal and a repeat felon. Appellant clearly fell within the spirit of the Three Strikes law, and he is being punished for his recidivism.

23.

Based on this record, appellant has failed to show that the trial court's ruling was irrational or arbitrary. The trial court acted well within its discretion to deny appellant's *Romero* motion. Accordingly, the court did not abuse its discretion and this claim fails.

### 3. Appellant has forfeited his claim that his sentence is cruel and unusual.

We agree with respondent that appellant has forfeited his claim that his sentence represents a cruel and unusual punishment. Appellant did not raise this issue below so we will not address it on appeal. (*People v. Speight* (2014) 227 Cal.App.4th 1229, 1247–1248.) In any event, we are already remanding this matter for resentencing.

### DISPOSITION

Appellant's sentence is vacated and this matter is remanded for resentencing. The trial court shall strike the enhancements imposed under section 186.22, subdivision (b)(1), and section 667.5, subdivision (b). During resentencing, the court shall exercise its discretion under Senate Bill 1393 regarding the five-year enhancement under section 667, subdivision (a)(1). Following resentencing, the court shall forward new abstracts of judgment to the appropriate authorities. In all other respects, appellant's judgment is affirmed.

LEVY, Acting P.J.

WE CONCUR:

MEEHAN, J.

SNAUFFER, J.

24.